# PENNSYLVANIA.

## MIDDLE DISTRICT—HARRISBURG, 1875.

79    15
141   443
79    15
150   401

79       15
207      2190

79       15
28 SC   2398

## Kille *vereus* Ege *et al.*

1. Ege in 1815 conveyed unimproved land, known as the "Cox tract," in trust for the wife of his son and her heirs, and died soon afterwards; at the time of the conveyance, and before, the son occupied an adjoining iron-works of his father, known as "Mt. Holly Estate;" this was adjudged to him in partition; he coaled, cut timber, &c., on the "Cox tract" for more than twenty-one years; the "Mt. Holly Estate" was sold by the sheriff in 1836 as the property of the son; the trust deed was not recorded until June 1848; the wife died in December 1848 and the son in 1858; no claim for the "Cox tract" was made by her heirs till they brought ejectment in 1872 against parties claiming under the sheriff's sale, and alleging that the "Cox tract" was part of the "Mt. Holly Estate." *Held*, under the circumstances of the case, the heirs could recover.

2. The record of the deed, showing that it was executed and acknowledged, raised the legal presumption that it had been delivered.

3. Ege being the owner of the land and having by the deed of trust separated the "Cox tract" from the "Mt. Holly Estate," evidence of possession of the "Cox tract" by the son, in connection with that estate before the deed, was immaterial to establish adverse holding by him.

4. In the proceedings in partition the "Cox tract" was not described as part of "Mt. Holly Estate." *Held*, that neither the son, nor those claiming under him, took any title to it, by the adjudication to him of that estate.

5. A party alleging error must prove it, and when the error relates to documents, copies must be produced to show their bearing.

6. The possession of the son during the life of his wife was not adverse, and the statute did not run; the evidence in the case did not show a continuous possession after the sheriff's sale.

May 13th 1875.   Before AGNEW, C. J., MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1875, No. 42.

(15)

This was an action of ejectment, brought June 7th 1872, by William Cox and others, legal representatives of William Cox, Sr., deceased, against Edward Noble and others, for a tract of land in Dickinson township, containing 333 acres 36 perches and allowance; known as the "Cox tract." On the 24th of April 1874, Caroline Ege and others, children and heirs-at-law of Elizabeth Ege, wife of George Ege, deceased, were admitted as plaintiffs; on the 12th of October John Kille was admitted to defend as landlord.

The premises in dispute had been part of the real estate of Michael Ege. He was a very extensive iron-master in the county of Cumberland, owning four iron-works, one of which was called the "Mount Holly Estate." After his death, under proceedings in partition, the "Mount Holly Estate" was adjudged to his son George. He having become embarrassed pecuniarily, this property was sold by the sheriff; the defendants claimed under the sale, alleging that the premises in dispute were part of the "Mount Holly Estate:" the plaintiffs denied this, alleging that they had been conveyed by Michael Ege in trust for their mother, the wife of George Ege, both being dead, and that the land had passed to them under the terms of the trust. The contest involved the validity of the deed of trust.

The trial of the case commenced October 12th 1874, before Junkin, P. J.

The plaintiffs gave in evidence: Warrant to William Cox, dated October 24th 1785, adjoining land of Stephen Foulk and Lewis Foulk, for 300 acres; survey, November 12th 1785, of 336 acres 36 perches, returned March 10th 1791. Deed from William Cox to Michael Ege, dated November 10th 1787, for the same land, recorded July 26th 1848. Patent to William Cox, Jr., for same land, dated March 19th 1791.

Under objection and exception, the plaintiffs gave in evidence the record of a deed dated June 2d 1815, and recorded June 7th 1848, from Michael Ege to John Miller, in trust for Elizabeth Ege, wife of George Ege, "in consideration of the regard and esteem which he has and bears to his daughter-in-law, Elizabeth Ege, the wife of his son George Ege, and for the purpose of promoting the interest of the said Elizabeth, separate and apart from that of her said husband, as also" of $10. The deed conveyed seven tracts, one of which was the above tract, warranted and surveyed to William Cox, the premises in dispute; this tract is described in the deed by courses and distances, "in trust for the said Elizabeth Ege, her heirs and assigns for ever, and for her and their sole and separate use and benefit, with full power in said trustee, together with the said Elizabeth Ege or her heirs consenting and joining with said trustee to sell," &c., any part of said property, the proceeds to be paid to Mrs. Ege for her sole and separate use, " to be

[Kille *v.* Ege.]

used and disposed of as she may think proper, either by will, deed or otherwise;" in case of the death of Miller, Mrs. Ege to have authority to appoint another trustee with the same powers, &c.

The deed was executed by Michael Ege in the usual form in presence of "George D. Foulk, George Patteson" with Michael Ege's receipt to Miller of same date as the deed for $10, "the consideration money;" with acknowledgment also of the same date before George Patteson, a justice of the peace. Michael Ege, Sr., died August 31st 1815; John Miller, the trustee, died in 1832; Elizabeth Ege, wife of George Ege, died December 6th 1848; George Ege died February 11th 1858. Their children were: Michael M. Ege, born October 13th 1810; John M. Ege, born December 13th 1813; Elizabeth Ege, born March 16th 1818, and Caroline Ege, born December 19th 1821. John M. Ege died February 1853; Michael M. Ege died April 18th 1864; both John and Michael left children, who are amongst the admitted plaintiffs in this suit; the writ was served June 7th 1872.

The plaintiffs rested.

The defendants gave in evidence an agreement dated December 8th 1785, between Stephen Foulk and William Cox, Jr., by which the parties agreed "to become co-partners and joint builders in building a saw-mill and a furnace, with improvements for carrying on," &c., Foulk to be at two-thirds of the expense in building and carrying on and to receive two-thirds of all the profits, and Cox to be at one-third of the expense and receive one-third of the profits; it was also agreed that a tract of 563 acres of Foulk and the premises in dispute held by Cox "shall be in partnership for the use of the aforesaid buildings," Cox to pay Foulk 94*l.* for one-third of his tract of land "to be an undivided right," Foulk to have the management and Cox to assist.

The defendants then offered in evidence a deed dated June 17th 1795, from Stephen Foulk to John W. Kittera and others, for a number of tracts of land surrounding the premises in dispute; and in connection, deed of same date from same to same for the land in dispute, by courses and distances. The plaintiffs objected to the offer; it was rejected, and a bill of exceptions sealed. The court in rejecting the offer said: The land in dispute was, by the agreement between Foulk and Cox, brought into partnership. The effect of the offer of both deeds is to convey any interest in Stephen Foulk to the grantors named, and the offer is for the purpose of showing that the Cox survey was thus brought into the "Mount Holly Estate." As between Cox and Foulk themselves, the tract was land, and as Cox never joined in either deed, Foulk, at most, could convey but his own land. If the Cox tract became part of the "Mount Holly Estate," it was not made so by these deeds.

29 P. F. SMITH—2

[Kille *v.* Ege.]

The defendants offered a deed, dated June 17th 1795, from Foulk to Kittera and others, for a number of tracts of land, amongst them, three in the name of Thomas Cookson, Lewis Foulk and John Foulk, respectively, which surround the land in dispute, and are conveyed by the deed as the "Mount Holly Estate;" also, deed of same date, between the same parties, conveying, by courses and distances, the land in dispute, together with a mortgage of the same date of the same land in both deeds from the grantees to the grantor, by the name of the "Mount Holly Iron-Works;" sale under the mortgage and conveyance by the sheriff of the same land by the same name to Michael Ege; to be followed by evidence that Ege adopted that name for the land, including the land in dispute, which, with other lands, had, up to the trial, been used and known as the "Mount Holly Iron-Works," had been so assessed and taxed, and no part assessed and taxed in any other name, for the purpose of showing that the land in dispute forms part of the "Mount Holly Estate," and to show the boundaries.

The court rejected the offer and sealed a bill of exceptions : saying that the sheriff's sale, not having been made under a judgment against Cox, would not pass his title. As to payment of taxes and other acts of ownership the evidence was admitted.

The offer was renewed for the purpose of raising the presumption of a conveyance from Cox to Foulk, because Foulk treated the land as his own by conveying, and no claim of the Cox title had been made till this suit.

The offer was rejected, and a bill of exceptions sealed, the court saying : that the presumption could not arise, as the Cox title was being asserted in this action; such presumption arising only to fill a wanting link.

The defendants, under objection and exception by the plaintiffs, gave the following evidence: Deed, dated June 1st 1803, from Grayson, sheriff of Cumberland county, to Michael Ege, for "Holly Iron-Works," containing 3989 acres of land, including that in dispute, sold under a judgment against Kittera and others, being the same formerly belonging to Foulk, and conveyed by him by two deeds dated June 17th 1795.

Also, that George Ege lived at the "Mount Holly Works" about 1812 or 1813, and carried them on. He built a good many houses about the works; some were occupied for a time by hands employed by him; were occasionally vacant and again occupied, and finally became untenantable; the lands were called George Ege's; that George Ege, while carrying on the Holly Works, coaled on the land in dispute, six or eight months in a season; that timber had been cut from time to time on the land in dispute by George Ege's hands whilst he occupied the "Mount Holly Works."

The defendant offered in evidence a number of leases by George

Ege of the "Mount Holly Works," including the land in dispute in 1827 and subsequently, for the purpose of showing acts of ownership and possession by him of this land.

They gave evidence that in the beginning of 1815 Michael Ege declared to George Ege that he intended to give each of his sons the property on which they respectively lived, "Mount Holly" being that to be given to George; each to receive to the value of $100,000. The "Holly Works" were not of the value of $100,000, and George was therefore to *receive* something. George and Michael, the son, were about to erect furnaces; after this George carried on the "Holly Works" as his own; paid and received the debts of the place, and began early in 1815 to build a furnace; Michael did the same. On the 3d of June 1815 the father met all the sons to have the deeds made to them. Peter, to whom had been assigned the "Cumberland Works," declined to receive his deed, on account of the amount he would have to pay beyond the value allowed to him; Michael took his deed; the father offered George his deed, saying he could either receive it that day or wait till he could take some land from Peter and add to it; George objected to receiving his deed. In the following August the father made a survey, for the purpose of cutting off a part of Cumberland and adding it to Holly, but died on the 31st of that month, before anything further was done. George occupied the Holly Works up to his father's death; the father never settled any of the accounts of either of the establishments, nor did he pay anything toward the buildings which he knew his sons were putting up in the spring of 1815; deeds were never delivered to Peter and George.

The defendants offered to prove by a witness on the stand that in 1823 he bought some trees of George Ege, who went with him and pointed out the "Cox tract" as the place to cut them, stating that it belonged to him and that the trees were to be cut there; for the purpose of showing a claim of title to the land which could not be affected by a secret trust after the land had passed into the hands of innocent purchasers and that the deed of trust could not then have been delivered.

The offer was rejected, on the ground that the land by the deed of trust had been vested in the wife of George Ege and his declaration could not be received to prejudice her.

Defendants then made the following offer of evidence :—

The deed of trust before in evidence conveying seven tracts on warrants, viz. : February 2d 1767, to Moses Foulk, 283 acres 40 perches; October 24th 1785, *William Cox,* 333 *acres* 36 *perches;* April 10th 1793, John Doran, 102 acres 92 perches; July 30th 1814, George Ege, 191 acres 130 perches; October 1st 1792, Michael Ege, 434 acres 40 perches; October 1st 1792, John

[Kille *v.* Ege.]

Arthur, 236 acres 40 perches ; October 1st 1792, Thomas Thornburg, 413 acres 108 perches.

They proposed to prove that George Ege was one of the administrators of Michael Ege, and left the deed of trust for record at the recorder's office, on June 7th 1848 ; that he and his wife, the cestui que trust, conveyed the tract of land in the name of Michael Ege to Sarah Miller, as bounded on all sides by land of Stephen Foulk, now George Ege ; that. John Miller, of Carlisle, on July 7th 1815, took out a warrant for 400 acres of land, adjoining land of Michael Ege, on the north, under which the land in dispute was surveyed to him ; that on July 15th 1815, a tract of 219 acres and 124 perches was surveyed on a warrant granted to Samuel White, for 200 acres, dated 8th September 1814; that the deputy-surveyor returned that a portion of the land so surveyed was claimed by George Ege, by virtue of a warrant granted to Moses Foulk, dated March 4th 1786, and that part of it was claimed by Thomas Thornburg, by virtue of a warrant to him, dated October 1st 1792, and that on March 3d 1817, the board of property, after hearing the claimants, decided in favor of the said George Ege and Thomas Thornburg, upon their respective claims as returned by the surveyor; that to the warrant of July 30th 1814, to George Ege, the deputy-surveyor made a return, accepted 2d May 1845, that he surveyed the tract on December 11th and 12th 1844, and that his survey is by the same courses and distances, and for the precise quantity of land by which it is described in said deed of trust; that such a return imports an original survey upon the days mentioned, and that after the lapse of nearly thirty years from the date of the deed of trust, a re-survey in the mountain and in the wooded district would have shown some. variations in the courses and distances ; that at a sheriff's sale of the property of William C. Chambers, prior to 1838, George Ege gave notice to bidders that the tract of land in the name of John Arthur, for 236 acres and 40 perches, under warrant of October 1st 1792, and about to be sold as the property of said Chambers, was the property of the said George Ege, and was a part of the Mount Holly estate ; this to be proven by the evidence of George Ege and others in actions brought in this court for the recovery of said land ; that in 1843, in this court, George Ege brought an action against the Farmers' and Mechanics' Bank, the purchaser of the Mount Holly estate, by a description which included the land in dispute, claiming that he had withdrawn certain exceptions to the confirmation of the sale of said property by the sheriff, upon the promise that the said purchaser would convey said estate to certain parties, in trust for the family of the said George Ege ; all this for the purpose of showing that the said deed of trust of June 2d 1815 was never executed by the said Michael Ege, or, if it was,

that it was never delivered to the trustee named therein. This was objected to by the plaintiffs.

The first part of the offer as to who procured the recording of the deed of trust was admitted, the remainder rejected and a bill of exceptions sealed.

This bill of exceptions was the seventh assignment of error.

The evidence under this offer was, that administration of the estate of Michael Ege had been granted September 18th 1815 to George Ege and others, and that the deed of trust was left for record with the recorder of deeds in 1848 by George Ege.

The defendant gave in evidence the assessment of the Mount Holly estate in gross for taxes in the name of George Ege, from 1814 to 1840.

Also, fi. fa. to August Term 1821, Farmers' and Mechanics' Bank against George Ege; debt $8480; real estate levied on. The judgment on which the execution issued was revived from time to time, and on the 23d of December 1836 there was an agreement to set aside the condemnation, and for an amicable condemnation, viz.: of several tracts of land named, "also the forge and furnace estate called 'Mt. Holly Iron-Works,' composed of several adjoining and contiguous surveys or tracts of land in south Middleton and Dickinson townships, containing about 7689. acres, bounded," &c. Under a venditioni to August Term 1838 the property above mentioned was sold and conveyed by the sheriff, August 20th 1838, to the Farmers' and Mechanics' Bank, for $28,600. This title passed to Kille, the defendant, by different conveyances to him, the last being dated January 2d 1871. In the various deeds it is described as the "Mt. Holly Estate," and the land in dispute is included.

Samuel Given, one of the intermediate owners, testified that he bought the Mt. Holly land in a lump, not knowing any of the lines of the "Cox tract." He used the whole as one tract; he had known it since 1826 and always saw it so used; there was one large line around the whole of the "Mt. Holly Estate;" it was never farmed or used for cultivation except about 50 acres about the furnace; never saw any cabin or cultivation on the "Cox tract."

The defendants closed.

Plaintiffs gave in evidence the petition of Peter Ege, one of the sons of Michael Ege, deceased, presented to the Orphans' Court of Cumberland county, November 11th 1815, for partition of the real estate of the decedent. It set out the death of the decedent without leaving a widow, but leaving five children: the petitioner, George, Michael (who had been advanced by the decedent in his lifetime), Mary and Eliza; that the decedent died seised of land in Cumberland and Adams counties, amongst the rest, twelve

[Kille *v.* Ege.]

tracts partly in South Middleton and partly in Dickinson townships, Cumberland county, known as the lands belonging to " Mt. Holly Iron-Works ;" there were also lands belonging to other iron-works, and lands not connected with such works, mentioned in the petition. Several inquests were awarded ; the pluries writ was confirmed July 16th 1816 ; that part of the petition and inquisition describing the tracts as belonging to the " Mt. Holly Works" did not include the seven tracts conveyed to Miller in trust for Elizabeth Ege. The " Mt. Holly tract," as returned by the inquest, contained 6556 acres and was valued at $60,190 ; it was adjudged to George Ege. Under objection and exception, the plaintiffs gave in evidence the administration account of George Ege, as one of the administrators, &c., of his father, exhibiting charges for services by him as manager of his father's iron-works, for the purpose of showing that he occupied the " Mt. Holly Estate " as agent for his father, and not as owner or for himself. The services extended from January 1801 to February 1st 1815, and, as allowed by the Orphans' Court on exceptions to the account, amounted to $5552.

The plaintiffs then offered the affidavit of George D. Foulk, one of the subscribing witnesses to the deed of trust, made on the deed and taken May 23d 1848, that his name as a subscribing witness was in his handwriting. Offered as corroborating the evidence of the record of the deed, the defendant having alleged that the deed was not genuine.

The offer was objected to, admitted by the court, as the grantor was dead when the affidavit was taken. A bill of exceptions was sealed for the defendant.

There was other evidence as to the adverse character of George Ege's possession, its continuance, &c.; also, as to the boundaries of the " Cox tract," in relation to the admitted Mt. Holly property and to improvements made on it.

The following are points of plaintiffs which were affirmed :—

2. The land which comprised the Mount Holly estate is ascertained and fixed by the proceedings in partition of the real estate of Michael Ege, deceased, and these proceedings being of record in the Orphans' Court of Cumberland county, and describing accurately the contents of the tract known as Mount Holly estate, by the names of the different warrantees of the lands comprising it, with the number of acres contained in each survey, the purchaser at sheriff's sale of the Mount Holly estate as the property of George Ege, took it with notice of record that the tract in dispute did not form a part of it.

4. No such open, notorious, adverse and continued possession of the land in dispute has been shown by the defendants, and those under whom they claim, as gives them a title under the Statute of Limitations.

[Kille *v.* Ege.]

The following are points of the defendant, and their answers :—

2. If the jury believe that the deed of trust, purporting to have been made by Michael Ege, Sr., to John Miller, in trust for Elizabeth Ege, on the 2nd June 1815, never was made *and delivered* by Michael Ege, their verdict should be for the defendants.

Answer. "This is correct, if it is found by you that it was not made and delivered. But the presumption is that it was both made and delivered, and we have drawn your attention to the corroborating circumstances, which support the presumption."

3. The deed of trust, purporting to have been executed by Michael Ege to John Miller, in trust for Elizabeth Ege, never having been recorded or made known until long after the death of John Miller, nor until 1848, after George Ege had been sold out by the sheriff; and no trustee was appointed after the death of John Miller ; and Elizabeth Ege, not having been shown to have had the deed recorded ; and George Ege, who had it recorded, being one of the administrators of Michael Ege, and in possession of all his papers ; and other deeds by Michael Ege, executed for parts of his property at the same time, which it is shown were never delivered ; the recording of said deed of trust is no evidence of delivery. And delivery being essential to its validity as an instrument conveying title, the facts stated are all suspicious circumstances for the consideration of the jury in determining whether the deed of trust ever was delivered.

Answer. "The deed being found duly recorded, the law presumes that it was both made and delivered, and the proceedings in partition by the son of grantor in the Orphans' Court, in which the lands embraced in the trust deed are omitted, strongly support the good faith of the deed, both as to making and delivery. We see nothing in any fact in the cause which tends to repel the legal presumption, but we refer the matter to you. As to the effect of not recording the deed until 1848, as there is no one claiming the land under the grantor, Michael Ege, by purchase or any other way, the failure to record the deed did not impair Elizabeth Ege's title under it."

4. If the deed of trust by Michael Ege to John Miller, in trust for Elizabeth Ege, was executed and delivered, Elizabeth Ege or her trustee had the right to bring suit for the land in 1838, immediately after the sheriff's sale of the property and possession taken by the purchaser, as George Ege had no marital right in the land. And as she lived until December 1848, and never brought suit, and her children and heirs never brought suit until 1874, and all lived within seven miles of the property and in the same county, and in the meantime the property passed to various vendees, who paid their money for it and expended money and labor in improving the property, without any notice of claim of title by Elizabeth

Ege, or the present plaintiffs, they are estopped from recovering it now, and the verdict should be for the defendants.

Answer. " She was not bound to bring suit at any time, and the heirs have sued in time; and they are not in any manner affected by the improvements made by the purchasers under the sheriff's sale in 1838; none were made on the land in dispute by any person after 1838, and if there had been, such improver could acquire no rights thereby. Improvements made on other tracts used as and called Mount Holly land in no wise gave title to the tract in dispute, and there could be no estoppel thereby. This Cox tract was an exterior tract of Holly, if it ever did belong to Holly, by *five* of its lines, and there were marks upon the ground, the tract well identified, and Mrs. Ege and her heirs were not bound to give the owners of Holly any notice, because they were not improving her or their tract—they were wrongfully cutting the timber and injuring her, instead of improving."

5. If the property was represented in the warrant, survey, and patent as seated land, and was returned by George Ege for taxation from 1814 to 1838 as his seated land; and a house was built on it by George Ege, which was occupied by his tenants; and the land was improved and cultivated for over twenty-one years by those who held under him, continuously, notoriously, and in hostility to all other titles; and George Ege was a son and heir of Michael Ege, who owned this land in his lifetime, and who died in 1815 intestate; and George Ege used the land from 1812 to 1838 as his land, coaling on it, cutting the wood on it, and it was all this time known as his; this would create in George Ege such a title as would pass the fee simple to an innocent purchaser at the sheriff's sale, who had no notice or knowledge of the deed of trust.

Answer. " Refused."

6. If the land in dispute belonged to Michael Ege, who put George Ege, his son, into possession of it prior to 1815, under an agreement with him that it should be his as part of Mt. Holly estate, he (George) to pay the debts which had been contracted there; and from that time George held it and used it as his own, as part of Mt. Holly Iron-works; and Michael Ege died in 1815, intestate, leaving George Ege in possession of said tract as his own; and George Ege continued in possession of Mt. Holly estate, and this tract included, until 1838, without objection or claim on the part of his brothers and sisters, or any other person, using and treating all the different tracts as one property, claiming ownership over it all as one property, cutting wood off it for his furnace and forge whenever he desired it, having his tenants living on it for over twenty-one years, having it assessed and taxed in his name, and in 1836 he gave an amicable condemnation to the sheriff of all Mt. Holly estate by boundaries which included

this tract; and neither Elizabeth Ege nor her trustee ever entered the deed of trust on record, nor had the land returned or taxed in her name, and gave no notice at the sheriff's sale of her title, the defendants are entitled to the verdict.

Answer. "This point is affirmed if you find the fact to be as therein stated. But where is the evidence to support the facts as recited? Do you find them in the case? George Ege was at Holly before the death of his father, but his account as administrator, filed in the Orphans' Court, shows that he was the agent or manager of his father at Holly, because he claimed and received $5000 for his services."

7. If the jury believe that the property in dispute belonged to Michael Ege, the father of George Ege, who died in 1815, and that George Ege, before and at the time of his father's death, and up to 1836, was using this property as his own, and as part of Mt. Holly estate, cutting wood off it for his furnace and forge, having tenants living on it who were in his employ for over thirty years, returning it for taxation as his property during all that time, and paying the taxes, all the other children and heirs, John Miller, the trustee, and Elizabeth Ege, acquiescing in those acts of apparent ownership, and in 1838 George Ege gave an amicable condemnation of Mt. Holly property, which was confirmed to him under proceedings in partition on his father's estate, to the sheriff, by boundaries which included this land, not mentioned in the proceedings, and it was sold by the sheriff on a venditioni exponas in 1838, to the Farmers' and Mechanics' Bank, who paid for it, and took possession of the whole Mt. Holly estate, including this land; the Farmers' and Mechanics' Bank came into possession of it by color of title, and this possession continuing in the bank, and those to whom it sold, until 1874, without interruption or claim by the plaintiffs, the title of the bank, and those to whom they sold, became perfect; and the plaintiffs cannot recover.

Answer. "Refused. If the land was his wife's, nothing done by him, recited in the point, could put her title in him; and if he had none, his amicable levy and condemnation and sheriff's sale under it gave no title."

The court, after stating the chain of the title of Michael Ege to the land in controversy, said: * * *

"Thus it is rendered certain and incontestable, that the legal title to the land in dispute was, on the 2d day of June 1815, lawfully vested in Michael Ege, the father of George. [Now, then, what did he do with it, because it was undoubtedly his to do with as he saw fit? Well, we find, that on the 2d June 1815, less than three months before he died, he did dispose of this Cox tract among others: that he conveyed it to John Miller, in trust for Elizabeth Ege, wife of his son George, and her heirs, for her separate use,

apart from her husband. Recorded the 7th June 1848. This deed contained six other tracts besides the Cox tract, to wit: * * *. The legal result of all, up to this point, is to put the title to the land now in dispute in Elizabeth Ege, the wife of George Ege, who was one of the three sons of Michael Ege aforesaid; and that title remained in her during her life, and descended upon her death to her children, and to the heirs of the latter, where any have since deceased. Those heirs or their descendants are here in court, asserting their mother's title against the present claimants of this Cox survey, for with that only have we now to do. It follows, then, that unless something has been done by this mother, Elizabeth Ege, in her lifetime, or some title has been acquired in some way, before or since her death, which defeats the title which was vested in her, these plaintiffs must recover the land in controversy.]

" We now turn to that inquiry, and will review the defence set up on behalf of the defendants and present claimants of this tract."

The court then referred to the evidence adduced to sustain the defence; and proceeded :—

" So far, then, as George Ege claimed by sale or gift from his father, it is our duty to say that neither is clearly established by the evidence. That the father placed him there and set him at work is doubtless true, but nothing like an agreement to sell or gift of the property to George is shown; an intention by the father to do so was expressed, but he never deeded the property by any conveyance that George would accept. [On the contrary, on the death of the father Michael, this Mount Holly property (but not this land in dispute) was valued and appraised, together with the other lands of the father, in due form, in the Orphans' Court of this county, and accepted by George Ege, at the valuation, and thus he got title to the Mount Holly lands, but the Cox survey was not embraced. It was not, nor were the remaining six tracts, embraced in the trust, included among old Michael Ege's land, by the inquest, and this tends to support the trust deed; because at his death he did not own the lands embraced therein.]

" The next branch of defence, and set up as title in George Ege, is the Statute of Limitations; that is, title by adverse possession. * * * The husband gets no title by trespassing or living on his wife's land; so that George Ege acquired no title as against his wife, by any renting, leasing, coaling, cutting or even *living* upon it, that has been proved to this tract of land. [It is a tract having distinct lines of its own, marked upon the ground, with several of the lines, corners and monuments still standing to this day; and although cut over by George Ege, Woodburn and Peter Ege, up to 1838, without regard to lines, and was used along with other lines for coaling, its identity was distinct from 1785, when the original survey was made, and is now.]

[Kille *v.* Ege.]

" Then, has any one else other than George Ege acquired title by adverse possession ?   Title by adverse possession must be an actual, adverse, visible, notorious, hostile and continued possession for twenty-one years.   All these ingredients must be present, or might as well be absent; if any one be wanting—for instance, that of *continued* possession—a dereliction in that quarter is fatal.  George Ege's lands, and this tract, as if his, among them, were sold at sheriff's sale in 1838, and since that, George Ege, the husband, has had nothing to do with the Holly lands or this tract; and since that year, any one who claimed and resided on it by himself or tenants, year by year, so that the owner of the paper title, coming there to look up his land, would have found a person in possession of it, against whom he could have brought suit, if desirable, and instead of suing such occupier, he was permitted to sit there and occupy for twenty-one years, he would acquire title. To constitute such possession, the person so claiming to occupy must live within the lines of the survey, or cultivate a portion of the land within the lines.   If such occupier stayed awhile and then left, and the property remained vacant for a year or more, that would not be continued possession, and no title would be acquired.   If a portion was cultivated only every few years, so that for several years together no cultivation or farming was done, that would not be such use of the land as would give title by adverse possession.   [Now, apply these principles to the facts of this case, and what have we ?   As to the occupancy of the old house in the forks of the Gettysburg and Laurel Forge roads, about which much testimony has been given, it is rendered certain by the surveyors called by defendants that it never was within the lines of the Cox survey; so that its occupancy goes for nothing.   Then there was another old log house that was on the Cox tract, situated on the left-hand side of the Gettysburg road, on what is called the Rocky road, which was used and occupied by the employees of George Ege up to 1835, and possibly up to 1838 or 1839 ;  but in that year (1839) Conrad Peffer, called by defendants, swears that he was there personally on the ground, and the house was then gone, dilapidated, unoccupied, and even the garden had been abandoned as early as in 1847, if not before ;  for he says when he first saw it in 1839, the house was gone, and that from 1839 to 1847 he never saw anything growing there; so that from 1838 to 1847, conceding it occupied would make no title by the statute, and thus this branch of the defence fails.   Cutting timber and coaling over the land gave no title by adverse possession, where the lines as here individuated the tract, it is simply trespass.]

The only remaining question is, did Michael Ege, Sr., in fact, make and deliver this trust deed of the 2d June 1815 ?   Is it his deed, and was it delivered ?   [The law presumes both execution

and delivery from the recorded deed as it appears. In order to overthrow it, there must be some satisfactory evidence pointing to it as a fraud, or justifying the conclusion that it was never delivered. It was not put upon record until 7th June 1848, which it is contended excites suspicion, and so it does seem singular that it remained so long unrecorded. But the circumstance of the seven tracts embraced in the deed being omitted from the Orphans' Court inquisition on old Michael Ege's estate, and the amount of the seven tracts reaching over 2000 acres, and that inquest, held only one year after the death of Michael Ege, the father, seem corroborative of the valid existence of this trust deed, that the lands aforesaid were known not to be a portion of his estate, that he parted with them before his death, and hence properly omitted, as being no part of his estate. And if parted with, to whom were they conveyed? Not to his sons, nor any one of them, for they can show no deed; whereas the trust deed to Miller, for the wife of George, embraces these very tracts. Peter Ege, a son, seventy-one days after his father's death, petitioned the Orphans' Court for the inquisition, and although he specifies and individuates fifty-nine tracts of land, leaves out these seven. Why? He was a son, and heir of this opulent landowner, and yet he made no claim to the seven tracts, embracing over 2000 acres.] * * *

A nonsuit was entered against the Cox plaintiffs, and a verdict was found for the other plaintiffs.

The defendants took a writ of error; they assigned for error:—

1–9. The rulings of the court on the questions of evidence, the 7th being the rejection of evidence to prove that George Ege and wife conveyed several of the tracts of land mentioned in the deed of trust, &c., as is above set out in the statement of the case.

10–14. The parts of the charge in brackets.

15, 16. The answers to the plaintiffs' points.

17–22. The answers to the defendants' points.

*J. Hays* (with whom were *A. B. Sharpe* and *W. H. Miller*), for plaintiff in error.—The recording of a deed is not conclusive evidence of its delivery: Chess *v.* Chess, 1 Penna. R. 32. The court should have told the jury this, and called their attention to the facts, inconsistent with its delivery, as they called their attention to the facts to show its delivery: Nieman *v.* Ward, 1 W. & S. 82; Parker *v.* Donaldson, 6 Id. 137; Heilbruner *v.* Waite, 1 P. F. Smith 259. The confirmation by the Orphans' Court of an inquisition and assigning lands to a party incapable of taking them under the law, cannot be questioned after the time for an appeal has elapsed: Painter *v.* Henderson, 7 Barr 48. It is uncertain what lands were embraced in the Mount Holly estate under the inquisition? Then it was for the jury to say by their verdict whether the land in dispute was included in it or not: Rex *v.* Rex,

[Kille *v.* Ege.]

3 S. & R. 540; Collins *v.* Rush, 7 Id. 152; Hoffman *v.* Danner, 2 Harris 29; Scott *v.* Sheakley, 3 Watts 50; Swartz *v.* Moore, 5 S. & R. 257; Hyskill *v.* Given, 7 Id. 372. As to the Statute of Limitations, it was forty years after the death of the trustee before any claim was made under the deed of trust; all the children had long attained their majority, and Elizabeth Ege, the wife, had been dead twenty-six years. During all this time George Ege had exercised the acts of an owner over the property. Even if the statute would not in strictness operate, the circumstances in connection with the lapse of time would raise a conclusive presumption against the claim: Strimpfler *v.* Roberts, 6 Harris 298. Although Mrs. Ege was a married woman, yet under the Act of April 22d 1856, sect. 1, Pamph. L. 532, 2 Br. Purd. 930, pl. 13, the adverse possession was a bar to her children; nor is there under that act any exception for persons under disability: Hunt *v.* Wall, 25 P. F. Smith 413; Henry *v.* Carson, 9 Id. 297; Pratt *v.* Eby, 17 Id. 396; Lenhart *v.* Ream, 24 Id. 59. George Ege had no curtesy in the land: Heck *v.* Clippenger, 5 Barr 385; and therefore the heirs of Mr. Ege had not ten years after his death in which to bring suit: Cochran *v.* O'Hern, 4 W. & S. 95; Stokes *v.* McKibben, 1 Harris 267; Rigler *v.* Cloud, 2 Id. 361; Yarnall's Appeal; 20 P. F. Smith 343. The deed of trust having been kept secret for so great a length of time, the plaintiffs are estopped: Woods *v.* Wilson, 1 Wright 384.; Carr *v.* Wallace, 7 Watts 394; Robinson *v.* Justice, 2 Penna. R. 19; Beaupland *v.* McKeen, 4 Casey 124; Keeler *v.* Vantwyle, 6 Barr 250; Knouff *v.* Thompson, 4 Harris 357; Hill *v.* Epley, 7 Casey 331. Using the land in dispute in connection with his own land, was such possession as would bring the statute into operation: Nearhoff *v.* Addleman, 7 Casey 279; Hole *v.* Rittenhouse, 1 Id. 491; Criswell *v.* Altemus, 7 Watts 580; McCall *v.* Neely, 3 Watts 69; Green *v.* Kellum, 11 Harris 254; Alden *v.* Grove, 6 Id. 377. Neglect to keep up possession after title has been acquired under the Statute of Limitations, does not affect such title: Schall *v.* Williams V. Railroad, 11 Casey 191; Leeds *v.* Bender, 6 W. & S. 318; Gregg *v.* Blackmore, 10 Watts 192; Mercer *v.* Watson, 1 Id. 339; Cooper *v.* Smith, 9 S. & R. 26; Porter *v.* McGinnis, 1 Barr 413; Dikeman *v.* Parrish, 6 Id. 210; Sailor *v.* Hertzogg, 2 Id. 184; Bunting *v.* Young, 5 W. & S. 196; Urket *v.* Coryell, Id. 60; Moore *v.* Luce, 5 Casey 262; Heckerman *v.* Hummel, 7 Harris 69. George Ege was not tenant by the curtesy; the estate passed to the children immediately on her death: Stokes *v.* McKibben, 1 Harris 267; Rigler *v.* Cloud, 2 Id. 351; Cochran *v.* O'Hern, 4 W. & S. 95; Hearle *v.* Greenbank, 3 Atkins 716; Morgan *v.* Morgan, 5 Mad. C. 245; Bennet *v.* Davis, 2 P. Wms. 316; Hill on Trustees 419–421.

[Kille v. Ege.]

*S. Hepburn, Jr.*, and *S. Hepburn*, for defendants in error.—
The trust deed was properly acknowledged, and legally recorded,
and that made its whole contents legal evidence: Leazure *v.* Hill-
egas, 7 S. & R. 317 ; Curry *v.* Raymond, 4 Casey 144 ; Wheeler
*v.* Winn, 3 P. F. Smith 131 ; Lancaster *v.* Smith, 17 Id. 432 ;
Kelly *v.* Dunlap, 3 Penna. R. 136.    We had the right to prove
the execution of the deed, both by the acknowledgment and by
the subscribing witness : Jordan *v.* Stewart, 11 Harris 247 ; Sig-
fried *v.* Levan, 6 S. & R. 311 ; Greenough *v.* Greenough, 1 Jones
498 ; Barker *v.* McFerran, 2 Casey 214 ; Hamsher *v.* Kline, 7 P.
F. Smith 403.    When the evidence offered to set aside a deed is
not such as would justify a chancellor in decreeing its cancellation,
or a common law court in declaring it inoperative, it should not be
submitted to the jury : Dean *v.* Fuller, 4 Wright 474 ; Delamater's
Estate, 1 Wharton 374 ; Graham *v.* Pancoast, 6 Casey 89 ; Nace
*v.* Boyer, Id. 110.    Acknowledging of a deed sealed by the party,
is tantamount to a delivery of it, if none had been made before.
A delivery may be not only by acts, but by words without any
act of delivery : Co. Litt. 36 a, Jamison *v.* Jamison, 3 Whart.
472.    A magistrate's " certificate is primâ facie evidence of his
authority and his signature :" Keichline *v.* Keichline, 4 P. F.
Smith 75 ;   Goddard *v.* Gloninger, 5 Watts 219 ;  Blight *v.*
Schenck, 10 Barr 289 ; Garnons *v.* Knight, 5 B. & C. 671 ;
Penna. Co. for Ins. of Lives *v.* Dovey, 14 P. F. Smith 260 ;
Boardman *v.* Dean, 10 Casey 252 ; Mitchel *v.* Ryan, 3 Ohio
377 ; Brown *v.* Bank of Chambersburg, 3 Barr 201 ; Long *v.*
Ramsay, 1 S. & R. 72.

The deed was good without recording, so long as it was not
affected by adverse possession under the Statute of Limitations :
Keller *v.* Nutz, 5 S. & R. 246 ; Morris *v.* Zeigler, 21 P. F.
Smith 450.    It was recorded long before the plaintiff in error,
or any under whom he claimed, bought, and that was sufficient :
Goundie *v.* Northampton Water Co., 7 Barr 233.    The judgment
creditor stood only in the shoes of George Ege : Reed's Appeal,
1 Harris 476.

As to George Ege's rights as tenant by the curtesy, they cited
Morgan *v.* Morgan, 5 Maddock's Chanc. 408 ; Pitt *v.* Jackson,
2 Brown's C. C. 51 ; Roberts *v.* Dixwell, 1 Atkins 609 ; Clancy
on Marital Rights 192, 193 ; Crabb on Real Prop., sect. 1108,
pp. 55, 77 ; Evans *v.* Knorr, 4 Rawle 67 ; Thornton *v.* Krepps,
1 Wright 391 ; Conner *v.* Chamberlain, 6 Allen 166 ; Richard-
son *v.* Stodder, 100 Mass. 528 ; Lancaster County Bank *v.* Stauf-
fer, 10 Barr 398 ; McMillan's Appeal, 2 P. F. Smith 434.
Abandonment arrests the effect of adverse possession : Stephens
*v.* Leach, 7 Harris 265 ; Ewing *v.* Alcorn, 4 Wright 499 ; Olwine
*a.* Holman, 11 Harris 284 ; Improvement Co. *v.* McCreary, 8 P.
F. Smith 314 ; Hockenbury *v.* Snyder, 2 W. & S. 240.

[Kille *v.* Ege.]

Judgment was entered in the Supreme Court, May 24th 1875,
PER CURIAM.—This case turns upon the question, whether the
tract of land in controversy, surveyed in the name of William Cox,
was, at the death of Michael Ege, a part of the forge and furnace es-
tate called Mount Holly Iron-Works, composed of several adjoining
and contiguous surveys or tracts of land, situate in the South Middle-
ton and Dickinson townships. This again hinges upon the question,
whether the William Cox tract was any part of the land described
in the proceedings for the partition of the estate of Michael Ege,
deceased. If it be clearly determined that the William Cox tract
was no part of the Mount Holly Forge and Furnace Estate, set
apart in the proceedings to Ege, the second son of Michael Ege, in
the year of 1816, it follows as clearly that the deed of June 2d 1815,
from Michael Ege to William Miller, as trustee of Elizabeth Ege,
for the William Cox tract with others, must have been delivered.
The execution of this deed is clearly established, and if the William
Cox tract was not included in the petition for partition filed No-
vember 11th 1815, and subsequent proceedings, it leaves no doubt
that the legal presumption of delivery, derived from the acknow-
ledgment by Michael Ege, the possession of the deed by Mrs. Eliz-
abeth Ege's husband, and recording of it, is true in fact. Michael
Ege conveyed on the 20th of June 1815, and died on the 31st day
August following, and the proceedings to divide his estate were
commenced on November 11th succeeding. The estate was one of
great value, the heirs were men and women of mature age, and the
proceedings conducted and participated in by the foremost men
of that part of the country. The proceedings themselves are minute
and particular. The Mount Holly estate is twice described with
the utmost precision, first in the petition, and next in the inquisi-
tion, as consisting of " twelve tracts," and these tracts are designated
by name and number of acres. The warrants are all stated sever-
ally and by name ; and the William Cox warrant and survey are not
among them. The number of tracts would be thirteen if it had been
included, instead of twelve, as stated, and therein particularized.
It is very clear, then, that the Mount Holly estate, as accepted by and
assigned to George Ege, did not embrace the Cox tract. It is
impossible to suppose that these grown men and women, and their
eminent friends and advisers, did not consider and describe well
the Mount Holly estate, or that they committed an error in leaving
out of so important a proceeding a large portion of the estate of
Michael Ege, deceased, for on this point we have to consider, not
only the William Cox tract, but the other six tracts embraced in
the deed of June 2d 1815. Then, in connection with this, we have
the fact of the making of the three deeds of the 3d of June 1815,
by Michael Ege to his three sons, Peter, George and Michael ;
Peter, the petitioner, reciting the advancement of Michael in lands
in the lifetime of his father ; coinciding with the undisputed fact,

[Kille *v.* Ege.]

that Peter and George refused their deeds, while Michael accepted his. Now, when we consider that the deed to Miller, as trustee of Elizabeth, was made the day before, for seven tracts of land, it is impossible to doubt that the family all knew well of this deed, and, consequently, that none of these seven tracts were embraced in the partition.

The deed of June 2d 1815 being thus established beyond all doubt, the assignments of error to the rejection of evidence, to show that in the lifetime of Michael Ege, Sr., the William Cox tract had been at an early day brought into the Mount Holly estate, are immaterial. For the moment that he, as the owner of the whole estate, separated it from the Mount Holly Forge and Furnace property, and his heirs following his act, left it out of the Mount Holly estate in the partition, it no longer constituted a part of that property; George took no title to it by his acceptance of the purpart containing the Mount Holly estate, and those claiming his title under that proceeding stand in no better relation.

This view of the case disposes substantially of all the assignments of error, for all bear on the question of the execution and delivery of the deed of June 2d 1815; and its establishment strips the defendants of all pretence of title. The only assignment of error bearing on this question having seeming weight, is the seventh, and this intrinsically has but little, for the acts of George Ege, and of adverse claimants of some of the tracts contained in the deed of June 2d 1815, can have but little weight in repelling the clear proof in law and fact of the execution and delivery of that deed. The offer affords scarcely more than a scintilla of evidence; and there is a decisive objection to the consideration of this assignment, consisting in the fact that the papers set forth in it have not been copied and presented for our consideration by the plaintiff in error. A party alleging error must prove it. He must therefore produce the documents by copies to show us what their bearing is. Now, not one of the papers referred to in the seventh assignment is printed and laid before us. The only knowledge we have of them is by the defendant in error, and these, as read, tend to show, that the court committed no error in rejecting the whole offer. This assignment of error out of the way, and nothing is left about which there can be any doubt.

Upon the evidence, the question of the Statute of Limitations is out of the case. In the lifetime and during the ownership of the Mount Holly estate by George Ege, the husband of Elizabeth, the statute did not run, even if the evidence was satisfactory of an actual possession of the whole tract by George Ege. His relation to her forbade the existence of adverse possession. After the estate passed out of his hands by the sheriff's sale, the evidence shows no continuous actual possession, the premises often being vacant, and the entries at intervals, and but for temporary occupation.

[Kille v. Ege.]

Upon the whole case, we are of opinion no error was committed by the learned judge.          Judgment affirmed.